```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

MICHELLE PORTER,                  *

    Plaintiff,                  *

vs.                               *
                                       CASE NO. 4:15-CV-93 (CDL)

J. LEN WILLIAMS and HOUSING       *
AUTHORITY OF COLUMBUS, GEORGIA,
                            *

    Defendants.

O R D E R

    Michelle Porter, who proceeds *pro se*, brings this action against her former employer, the Housing Authority of Columbus, Georgia ("Housing Authority"), and the Chief Executive Officer of the Housing Authority, J. Len Williams, for allegedly denying her overtime compensation in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* Porter also brings numerous state law fraud claims against Defendants. Presently pending before the Court is Defendants' motion for summary judgment. (ECF No. 10). For the reasons discussed below, the Court grants Defendants' motion for summary judgment as to Porter's FLSA claim and declines to exercise supplemental jurisdiction over Porter's state law claims. Accordingly, this action is remanded to the State Court of Muscogee County for resolution of those state law claims.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

BACKGROUND

Viewed in the light most favorable to Porter, the record reveals the following.

Porter began working at the Housing Authority in February 2011. The Housing Authority is an entity created by the state of Georgia to provide housing to low-income persons. The Housing Authority initially hired Porter as a neighborhood network coordinator. Porter learned of the neighborhood network coordinator position through an advertisement that represented the job as earning "$30,000 plus" annually. Pl. Dep. 49:11-50:9, ECF No. 8. The advertisement also represented that the

2

job paid $13.78 per hour and was part time. Porter asserts that the Housing Authority defrauded her because the advertisement stated that the neighborhood network coordinator could earn "$30,000 plus" and Porter's annual income as a neighborhood network coordinator never exceeded $30,000. Porter acknowledges, however, that the Housing Authority paid her $13.78 per hour, as advertised.

Approximately two years later, in May 2013, the Housing Authority made Porter its family self-sufficiency coordinator. This position was full time and provided limited benefits. The position paid $19.57 per hour. The family self-sufficiency position was funded by a grant from the U.S. Department of Housing and Urban Development ("HUD").

Porter claims that she worked overtime without compensation while employed as a family self-sufficiency coordinator. Porter worked over forty hours a week on one occasion: she worked forty-two hours the week of December 9, 2013. Pl. Dep. Ex. 3, Pl.'s Timesheets, ECF No. 8-3 at 75; Pl. Dep. 33:8-19, 42:17-20; Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. 3, ECF No. 12 (stating that Porter does not dispute that the only week that she worked overtime was the week for December 9, 2013). The Housing Authority's time sheets and pay stubs reflect that Porter was compensated with three hours of paid time off during the following week. Nevertheless, Porter contends that the

Housing Authority denied her overtime pay because it did not—with the exception of the week of December 9—allow her to work over forty hours a week. For example, Porter testified that if she worked ten hours on a Monday, her supervisor would require her to work only six hours another day that week. Pl. Dep. 42:21-43:8. Thus, with the exception of the week of December 9, Porter never worked more than forty hours in a workweek.

Porter also contends that Defendants defrauded her in several ways while she was a family self-sufficiency coordinator. First, Porter claims that the Housing Authority made fraudulent misrepresentations regarding Porter's eligibility for benefits such as a cell phone stipend and travel mileage reimbursement. Porter testified that when she began working as a family self-sufficiency coordinator, she asked her immediate supervisor, Beverly LaMee, and human resources director Susan McGuire for a cell phone stipend and travel mileage reimbursement. LaMee and McGuire initially told Porter that she was not eligible for these benefits. Later, LaMee received permission from Housing Authority Chief Executive Officer J. Len Williams to give Porter a cell phone stipend and travel mileage reimbursement. From then on, the Housing Authority gave Porter a cell phone stipend and travel reimbursement. It also awarded her these benefits in arrears to cover the entire time that she was employed as a family self-

4

sufficiency coordinator. *Id.* at 85:6-17. Nevertheless, Porter claims that the Housing Authority intentionally defrauded her by initially declining her request for travel reimbursement and a cell phone stipend and then later giving her those benefits. *Id.* at 111:20-23.

Second, Porter contends that the Housing Authority defrauded her by not paying her the entire amount awarded by the HUD grant. The HUD grant provided $46,000 in funding for the family self-sufficiency position and the Housing Authority used approximately $40,000 to pay Porter. Porter asked LaMee and McGuire why she was not paid the entire $46,000 awarded by the grant. LaMee and McGuire explained that the Housing Authority used the remaining funding to pay overtime, bonuses, and the employer match on social security. Porter was unsatisfied with LaMee and McGuire's answer so she met with Williams. Williams represented that the remaining funding was used to pay for insurance and social security. Porter claims that Williams intentionally lied to her because the Housing Authority never provided her with health insurance. She also claims that the Housing Authority defrauded her by using some of the grant funding to pay the employer match on her social security; Porter believes it is unlawful for an employer to use grant funding to pay its portion of social security. *Id.* at 89:1-15.

Finally, Porter contends that the Housing Authority made fraudulent representations in a letter it sent regarding health insurance. This letter stated that the Affordable Care Act did not require the Housing Authority to provide Porter with health insurance. Porter asserts that the letter was fraudulent because she believes that the Affordable Care Act required the Housing Authority to provide her with health insurance.

On January 16, 2014, the Housing Authority terminated Porter. The Housing Authority asserts that it terminated Porter due to "unsatisfactory job performance." Defs.' Mot. for Summ. J. Ex. O, Separation Notice, ECF No. 10-21. Porter contends that she had no job performance problems. Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. 4-5. A few months later, in August 2014, Porter filed a complaint with the Occupational Safety and Health Administration ("OSHA") regarding the Housing Authority's failure to provide her with health insurance. An Administrative Law Judge ("ALJ") concluded that the Affordable Care Act did not require employers to provide health insurance in 2014; therefore, the ALJ granted the Housing Authority's motion for judgment as a matter of law. Porter then brought this action in the State Court of Muscogee County, Georgia and Defendants removed it to this Court.

6

DISCUSSION

Porter brings claims against the Housing Authority for FLSA violations. She also brings several fraud claims against both the Housing Authority and Williams.

**I.      Fair Labor Standards Act**

Porter claims that the Housing Authority denied her overtime compensation in violation of the FLSA. The FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). To prevail on an FLSA overtime claim, an employee must prove that she was "permitted to work [overtime] without compensation." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007). "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 1316 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254(a), *as recognized in Integrity Staffing Sols., Inc. v.*

7

*Busk*, 135 S. Ct. 513, 516-17 (2014)).  "The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

Porter fails to produce any evidence indicating that she worked over forty hours in a workweek without receiving overtime compensation.  Porter worked overtime on only one occasion: she worked forty-two hours during the week of December 9, 2013.  Pl. Dep. 42:17-20.  The Housing Authority's records reveal that it compensated Porter with three hours of paid time off.  Pl. Dep. Ex. 4, Request for Payment, ECF No. 8-4.  Porter does not dispute that she received this compensatory time off.  But Porter asserts that she should have been compensated with overtime pay instead of time off.  The FLSA permits employers to give employees of a public agency compensatory time off in lieu of overtime pay:

> Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

29 U.S.C. § 207(o)(1).  Porter introduces no evidence that the Housing Authority awarded compensatory time off in a manner inconsistent with § 207(o).

8

Porter also asserts that the Housing Authority denied her overtime pay by preventing her from working over forty hours a week. For example, if Porter worked ten hours one day, then she was required to work only six hours on another day of that same week. Pl. Dep. at 41:22-42:16. This system ensured that Porter did not work more than forty hours in one workweek. *Id.* at 43:5-8. "[A] workweek no longer than the prescribed maximum is a nonovertime workweek under the Act, to which the pay requirements . . . but not [the overtime compensation requirements] are applicable." 29 C.F.R. § 778.101. Because Porter does not present any evidence that would allow a reasonable juror to conclude that she worked over forty hours in a week without receiving overtime compensation, her claim for overtime compensation under the FLSA fails. Accordingly, the Housing Authority is entitled to summary judgment on Porter's FLSA claim.[1]

---

[1] In Porter's response to Defendants' motion for summary judgment, Porter asserted for the first time that the Housing Authority violated the Federal Insurance Contributions Act, 26 U.S.C. § 3101 *et seq.*, as well as 18 U.S.C. § 1035 and 18 U.S.C. Chapter 47. The Federal Insurance Contribution Act does not create a private right of action. *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 723 (11th Cir. 2002). Therefore, any claim under the Federal Insurance Contributions Act fails as a matter of law. Porter also claims that the Housing Authority violated 18 U.S.C. § 1035 and 18 U.S.C. Chapter 47. These are criminal provisions of the U.S. Code that do not provide a private right of action and do not suggest that Congress intended to create a private right of action. *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960) ("The sections of Title 18 may be disregarded in this suit. They are criminal in nature and provide no civil remedies."). Thus, any claims under Title 18 fail as a matter of law.

**II. State Law Claims**

Porter's state law claims against the Housing Authority and Williams are dubious.  But the resolution of her state law claims against the Housing Authority requires the Court to decide a state law sovereign immunity issue that has not been squarely addressed by the Georgia appellate courts.  Rather than injecting itself unnecessarily into the resolution of a state law issue of first impression, the Court exercises its discretion to decline supplemental jurisdiction over Porter's state law claims.  Accordingly, this action shall be remanded to the State Court of Muscogee County, Georgia for the resolution of those state law claims.

CONCLUSION

For the above stated reasons, the Court grants the Housing Authority's motion for summary judgment as to Porter's FLSA claim.  The Court declines to exercise supplemental jurisdiction over her state law claims against the Housing Authority and Williams.  Accordingly, the Clerk shall enter final judgment in favor of the Housing Authority on Porter's FLSA claim, and shall then remand this action to the State Court of Muscogee County for resolution of Porter's state law claims.

IT IS SO ORDERED, this 28th day of June, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE